## Ollie Tucker v. Champaign County Agricultural Board.

1. NEGLIGENCE—*Evidence to be Restricted to the Place of the Accident.*—Upon the trial of an action for personal injuries resulting from a fall through a hole in the floor of an amphitheater, it is not error to restrict the inquiry as to the condition of the amphitheater to that portion of the floor where the appellee was injured.

2. NEGLIGENCE—*A Question for the Jury.*—Where, upon the question of negligence the evidence is conflicting, and its determination depends largely upon the credit and standing of the different witnesses, and the weight and value that ought to have been given to the testimony of each of them, an appellate court should not interfere with the conclusions reached by a jury, unless they are improperly instructed as to the principles of law involved in the case.

3. FAIR ASSOCIATIONS—*Duty in Erecting Structures.*—Associations holding fairs and erecting amphitheaters and other structures for the purpose are liable for injuries to patrons caused by the breaking down of these structures by reason of such defects in construction as proper care would have avoided.

4. FAIR ASSOCIATIONS—*Care to be Used in Erecting Amphitheaters.* —Fair associations, in the erection of amphitheaters and other structures of a like character, are held only to the duty of exercising reasonable care in constructing or repairing them, keeping in view the use to which they are to be devoted, but this degree of care is charged upon the proprietor as a personal duty to be discharged by him. The burden of seeing and knowing that the structures have been constructed with reasonable skill, care and prudence, being cast upon him, he is answerable for independent contractors employed by him, whose failure to use due or ordinary care is to be deemed a failure of the proprietor.

5. FAIR ASSOCIATIONS—*Not an Insurer of its Patrons.*—Fair associa-

tions are not the insurers of the safety of their patrons, and beyond this, the only warranty is that implied, that persons employed by them to remove or repair an amphitheater are competent to perform such work, and that they did perform it with reasonable or ordinary skill and prudence.

6. FAIR ASSOCIATIONS—*Right of Patrons to Assume That Structures are Reasonably Safe.*—A visitor to a fair has the right to assume the floors of such structures as amphitheaters are sound, free from holes, and safe for the purpose to which they are devoted by the proprietors, and may, in the exercise of ordinary care, enter into and pass about within such structures in all of its parts intended for public use with the assurance that it is not dangerous so to do.

7. INSTRUCTIONS—*Erroneous, Cured by Special Finding.*—Where an instruction is erroneous in tending to mislead the jury, but the jury, by its answers to special interrogatories, shows conclusively that it was not misled, the error is not one which requires a reversal of the judgment.

**Memorandum.**—Action for personal injuries. Error to the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

J. O. CUNNINGHAM, attorney for plaintiff in error.

GERE & PHILBRICK, attorneys for defendants in error.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

This was an action of trespass on the case. The plaintiff in error, in her declaration, alleged and charged that, on August 27, 1890, she attended the agricultural fair, held by the defendant in error on its fair grounds in Champaign, paying the usual gate fee upon her entrance, and entered the amphitheater prepared by the defendant for the use of visitors, the better to enable them to see the exhibition; that defendant was under obligations to keep said amphitheater in good and safe repair and condition, yet, not regarding its duty in that behalf, carelessly and negligently suffered the same to be in an unsafe condition so that the plaintiff, while exercising ordinary care, fell through a hole in the floor of the same amphitheater and injured her leg.

A plea of not guilty was interposed by the defendant board, and a trial had at the March term, 1892, resulting in a verdict for the defendant in error.

The jury also returned with their general verdict answers to special questions of facts, as follows:

1.  Was the grand stand or amphitheater of the defendant in reasonably safe condition and repair just before and about the time of the alleged injury?  "No."

2.  Did the defendant know of such defect, or could it have known of it by the exercise of due diligence before the said injury long enough to have the same repaired?  "No."

3.  Did the defendant use due care and diligence to keep the said grand stand or amphitheater in a reasonably safe condition and repair?  "Yes."

4.  Did the defendant use due and proper care in keeping the amphitheater in proper and suitable repair?  "Yes."

5.  Did the plaintiff use ordinary care for her own safety at the time she is supposed to have stepped into the hole in the floor of the amphitheater?  "Yes."

The jury returned unanswered the following special question:

6.  Did the defendant exercise ordinary care in putting the amphitheater into proper and suitable repair before the above accident occurred?

The court overruled a motion entered by the plaintiff in error for a new trial, and entered judgment against her for costs.

This is a writ of error, prosecuted by the plaintiff below, to obtain the reversal of the judgment.

Though formally assigned as for error that the court refused to admit proper evidence offered in behalf of the plaintiff in error, reference made in the brief of counsel thereto, is, in a general way, that the court restricted the inquiry as to the condition of the amphitheater to that portion of the floor where the appellee was injured.  This ruling was, we think, correct.  It could not have availed to benefit the plaintiff in error to show, if she could have done

so, that the floor was defective at other places than where she was hurt, and to have entered upon an investigation of the amphitheater in its entire extent would have uselessly consumed the time of the court and brought immaterial issues into the case.

So, also, it is formally assigned as error that the court erred in not requiring an answer to the sixth question submitted to the jury, but the brief is silent as to this objection. This alleged error is therefore deemed waived or abandoned. The testimony of the plaintiff was that while upon the amphitheater she stepped through a hole in the floor, with the left limb, to a point above the knee. She claimed, and introduced testimony tending to show that the hole was caused by the giving way of a portion of a rotten plank in the floor of the amphitheater, and that the defendant in error negligently omitted its duty in allowing the hole and decayed plank to remain and be in the floor of the amphitheater while the fair was in progress, and while she and many other persons, upon the tacit invitation of the defendant in error, were upon the amphitheater.

The defendant in error contended and produced evidence tending to support the contention that just before the opening of the fair for that year it appointed a committee, consisting of the president of its board of directors and two other members of its board, to cause the amphitheater to be moved some twenty feet back from its then position near the race or trotting tracks, with directions to set under it a good foundation and put the floor in good, safe condition. That the committee contracted with a competent carpenter and builder to do the work, and that the work was done, and properly and carefully done, before the opening of the fair; that some holes were in the floor, caused in most, if not all instances, by the removal of the structure, but in some cases by reason of decayed or rotten places in the planks in the floor; and that after the removal, and before the fair was opened, the floor was carefully inspected, all holes securely covered with pieces of new plank, and sound inch lumber nailed over planks that seemed to be at all decayed; and that

the amphitheater floor was in proper and safe condition and ready for the use for which it was intended when thrown open to the people.

Evidence tended to show that a plank of new, sound lumber, three feet long and eight inches wide, and one and one-fourth inches thick, its edges being beveled, was nailed by the carpenters over the identical hole into which the foot and limb of the plaintiff in error passed, and that the hole was found to be thus safely and securely covered in the morning of the day of, and prior to the time of the injury to the plaintiff in error, while other evidence produced likewise by the defendant in error tended to show that soon after her injury the plank which had been nailed over the hole was found broken or split apart lengthwise, and the half of it forced away from its place as a cover for the hole, apparently the result of blows or force applied from beneath the amphitheater. The plaintiff in error contended, and evidence in her behalf tended to show that the hole into which she fell had not been covered, and was not the same hole to which the witnesses for the defendants in error referred. A number of witnesses were produced in behalf of each of the contending parties, and we find that the questions of fact involved in the investigation were stoutly contested and the subject of much conflicting testimony, and that their determination depended largely upon the credit and standing before the jury of the different witnesses, and the weight and value that ought to have been given to the testimony of each of them by the jury. Upon well settled and familiar rules an appellate court should not, and will not interfere with the conclusions reached by a jury upon such evidence, unless it is found that they were improperly instructed as to the rules or principles of law involved in the case. Complaint is made against instructions 3, 4, 5, 8, 10 and 12, given at the request of the defendant in error. These instructions advise the jury that the defendants in error were only required to exercise ordinary care and diligence to secure the safety of the plaintiff in error, and others, its patrons, while attending its fair and upon its amphitheater. Counsel for

plaintiff in error in their brief insist that the degree of care required to be exercised by the defendant board in behalf, and for the security of persons in and upon its amphitheater is not ordinary care, but " the highest reasonable and practicable skill, care and diligence." As being in support of this view counsel cite C. & A. R. R. Co. v. Pillsbury, 123 Ill. 21; T. W. & W. R. R. Co. v. Grush, 67 Ill. 263, and Latham et al. v. Roach, 72 Ill. 179.

Railroad companies, as public carriers of passengers, are held to the utmost possible care in constructing and in discovering and remedying defects in cars, coaches, engines, etc., intended to be put in rapid motion for the purpose of conveying its passengers, and in its other appliances constructed for the purpose of aiding in the propulsion or management of cars, coaches, engines, etc., that are to be put in motion, because defects in appliances so intended to be moved with great force and velocity would be likely to occasion great danger and loss of life; but the degree of care required of such carriers is not so great when liability because of defects in halls and stairways in and about its depots or other structures intended for public use, but not movable, and the relation of passengers and carriers has not been created, is to be determined, the rule as to such structures being that the carrier is bound simply to the exercise of ordinary care in view of the danger to be apprehended. Hutchinson on Carriers, Sec. 521; Morland v. Railroad Co., 141 Mass. 31.

No reason is perceived why a higher degree of care should be required of a fair association with reference to its amphitheater than of a railroad company with reference to its duty in constructing and keeping in repair the halls, stairways and waiting rooms of its stations. The case of C. & A. R. R. Co. v. Pillsbury, *supra*, was that of a passenger who was injured while upon a train of railroad cars, and we find nothing in the opinion of the court in the case applicable to the question here presented. The case of T. W. & W. R. R. Co. v. Grush, *supra*, was an action to recover damages for injury received by stepping into a hole in the platform at a railroad station, but it did not become necessary nor did the court

take occasion in the course of the opinion to pass upon or discuss the degree of care that the law demanded of the railroad company. The question which demanded and received the attention of the court in Latham et al. v. Roach, 72 Ill. 179, cited by counsel of plaintiff in error as being in support of the position urged by them, was whether the evidence upon which the judgment passed in the Circuit Court showed a cause of action against the Logan County Agricultural Society or against the members of the board of directors as individuals, the degree of care required not being at all involved, nor did the court express any opinion upon that question. In the case of Currier v. Boston Music Hall, 135 Mass. 414, it was held that the proprietors of the music hall were bound only to exercise ordinary care and diligence in the discharge of the duties to the patrons of the hall who attended and paid for the privileges of entering and being entertained. Judge Cooley in his works on Torts, says: "When one expressly invites another to come upon his premises for business or other purposes, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises safe. Thus, individuals holding fairs and erecting structures for the purpose, are liable for injuries to patrons caused by the breaking down of these structures through such defect in construction as proper care would have avoided." Cooley on Torts, 2d edition, page 718.

Speaking of the principle to be applied in a case against one who caused a building to be erected for viewing a public exhibition and admitted spectators on the payment of money, it is said in Thompson on Negligence, Vol. 1, page 311: "In such a contract there is an implied warranty, not only of due care on the part of himself and his servants, but also of due care on the part of himself and any independent contractor who may have been employed by him to construct the buildings, stands, or other structures which the public are invited to use."

We think the true rule to be gathered from all the authorities is, that the proprietors of such structures as the one in question, or structures intended for like uses, are held only

to the duty of exercising reasonable care in constructing or repairing them, keeping in view the use to which it is to be devoted, but that this degree of care is charged upon such proprietors as a personal duty to be discharged by them— the burden of seeing and knowing that the building has been constructed with reasonable skill and care and prudence being cast upon them and they held answerable for independent contractors employed by them, whose failure to use due or ordinary care is to be deemed a failure of the proprietors. In the case at bar the acts of the proprietors (the defendants in error) and of the contractor who was engaged by them to move the amphitheater and to repair and put it in condition for use by the patrons of the fair, were brought fully into review by the evidence, and all the facts bearing upon the competency, conduct, care and diligence of both such parties fully investigated by the jury, and the case submitted upon the theory that the default of either bound the proprietors, if such default amounted to a lack of due care.

Moreover, the plaintiff in error is hardly in a position to question the instructions in this respect for the reason that in the Circuit Court the jury were instructed, at her request, that due or ordinary care only was required of the defendant board. In the first instruction given at her instance, the jury was advised that unless the "evidence as to the repairs made by the board shows that the structure was by the repairs rendered reasonably safe," the defense of "due care" must fail. The second instruction given at her request announces the doctrine that if the floor of the amphitheater was unsafe and remained in that condition for such a length of time that the defendant, in the exercise of reasonable care and prudence, ought to have discovered its defects, then the jury should hold the board liable if the plaintiff in error was injured while using due care and caution, etc. And the fourth instruction given at the request of the plaintiff in error, declares the law to be that if the board maintained a passageway or walk in its amphitheater it was bound to use reasonable care and caution to keep the same reasonably safe for visitors to the fair to walk upon, and that if it appeared from the evidence that the

board failed to have such walk in reasonably safe repair, etc., liability would attach for any injury. The plaintiff in error asked of the court four instructions which were refused, none of which purport to announce a different doctrine as to the degree of care required of the board, but upon the contrary the second of such refused instructions expressly asks the court to declare that " it was the duty of the board to keep its buildings," etc., in a reasonably safe condition for the prevention of injury to its patrons. The plaintiff in error can not, with propriety, criticise or question the action of the Circuit Court in accepting the theory or rule of law upon which she voluntarily chose to rest her cause. Special complaint is made of the tenth instruction given for the defendant in error, the special ground being that it states that the board " is not an insurer or warrantor of its grand stand." Appellee insists that the board, under all the authorities, is held to warrant to a greater or less extent the condition of the amphitheater. We know of no authority going to the extent of holding the defendant in error to be the insurers of the safety of its patrons; and beyond that the only warranty implied is, that persons employed by them to remove or repair the grand stand were competent to perform such work, and that they did perform it with reasonable or ordinary care, skill and prudence. All this, as we before said, was brought before the jury and their judgment had upon it.

We recognize the force of the objection preferred against the eleventh instruction given at the instance of the defendant in error. This instruction advised the jury that " it was the duty of the plaintiff to use all of her faculties of hearing and seeing to avoid injury, and that if they believed from the evidence that she was watching the people or crowd and was not looking to see where she was walking and stepped into the hole that she might have seen, etc., she could not recover." The question whether the plaintiff in error was in the exercise of due care for her own safety was wholly a question of fact. Nor do we conceive it to be true in matter of fact, law or reason, that a visitor at a fair, instead of employing her time and faculties in admiring and contem-

plating objects, animals and articles brought together there for her entertainment, instruction or amusement, is required to employ her time and her senses of vision and hearing in looking at the floors of the amphitheater to see if it is free from dangerous holes, or in listening that she may hear sounds indicative of possible danger. Such a visitor has the right to assume the floors of such structures as amphitheaters are sound, free from holes, and safe for the purpose to which they are devoted by the proprietors of the fair; and she may, in the exercise of ordinary care, enter into and pass about within such structures in all of its parts intended for public use, with the assurance that it is not dangerous so to do. Whether the appellee as a visitor and sightseer at the fair, employed her powers of vision and her sense of hearing and otherwise conducted herself with such due and reasonable reference to her own safety as ought have been expected when all the circumstances were considered, was a pure question of fact for the determination of the jury, who needed only to be told the degree of care the law required to be exercised. City of Chicago v. McLean, 133 Ill. 148. The instruction under consideration was radically wrong in point of law, in that it invaded the province of the jury and assumed to determine for them a pure question of fact, and to declare negligence from facts from which such a conclusion did not conclusively, nor to our mind, even apparently, follow. Had the jury returned only a general verdict, we should have given the possible effect of this instruction serious attention. It was a palpable misdirection, and tended to lead the jury to conclude that the plaintiff in error had failed to use ordinary care for her own safety.

It, however, had no other injurious effect, and, as it appears conclusively from the fifth special finding of fact returned by the jury, that they found and determined that she had exercised ordinary care, it is perfectly clear that the instruction did not mislead the jury to her injury.

There appears no reason requiring a reversal of the judgment. It is therefore affirmed.